1

2

3

4

5

6

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

7

8

9

10

11

12

13

14

15

16

17

| | |
|---|---|
| ANDREWS REVOCABLE TRUST; LINDA ANDREWS, a Washington resident; KRISTEN ANDREWS, a resident of British Columbia; SUSAN ANDREWS, a resident of British Columbia,<br><br>Plaintiffs,<br><br>v.<br><br>919 109TH AVENUE OWNER, LLC, a foreign limited liability company d/b/a PACIFIC REGENT BELLEVUE SENIOR LIVING; COGIR MANAGEMENT USA INC., a foreign corporation; FOUNTAINS BELLEVUE SL, LLC, a foreign company; WATERMARK RETIREMENT COMMUNITIES, LLC, a foreign corporation,<br><br>Defendants. | NO. 2:24-cv-01672-RSM<br><br>**AMENDED COMPLAINT FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT; BREACH OF FIDUCIARY DUTY; BREACH OF CONTRACT; UNJUST ENRICHMENT; VIOLATIONS OF THE RULE AGAINST PERPETUITIES; UNJUST ENRICHMENT; and OTHER WRONGFUL CONDUCT**<br><br>**CLASS ACTION** |

18

19

COME NOW the Plaintiffs, Linda Andrews, Kristen Andrews, and Susan Andrews, by

20

and through their attorney of record, and hereby allege as follows:

21

22

23

24

**AMENDED COMPLAINT FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT; BREACH OF FIDUCIARY DUTY; BREACH OF CONTRACT; UNJUST ENRICHMENT; and OTHER WRONGFUL CONDUCT - 1**
NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

## 1. INTRODUCTION

1.1    The Plaintiffs are the Trustee and Beneficiaries of the Andrews Revocable Trust. The Plaintiffs bring this lawsuit on behalf of themselves and as Beneficiaries; and on behalf of the Andrews Revocable Trust; and all similarly situated persons. This suit follows months of failed attempts to resolve this dispute directly with the Defendants. All Defendants herein are collectively referred to hereafter as "Pacific Regent."

1.2    Pacific Regent is a senior living community located in Bellevue, Washington, for persons at least sixty-two (62) years of age. It is a 101-unit retirement facility owned by 919 109TH Avenue Owner, LLC. Jane Andrews and her husband were required to pay a 90% refundable "Entrance Fee" when they moved into Pacific Regent in 2014. The fee was substantial - $586,577.00.

1.3    I. Robert Andrews, the Plaintiffs' father, predeceased his wife, Jane. Jane Andrews "vacated" her unit upon her passing in June of 2021, more than three years ago. Still, Pacific Regent failed to return the Entrance Fee to Jane Andrews's Revocable Trust or its Beneficiaries until the filing of this lawsuit, even though the unit was re-rented in May of 2024. Pacific Regent took the position that it would not make any repayment until the unit was re-rented *and* reoccupied. Even though the unit has been re-rented, Pacific Regent did not return the Entrance Fee until *after* the instant action was filed. Substantial damages owed to the Plaintiffs remain owing.

1.4    Prior to the re-renting of the unit in May of 2024, the unit sat empty for three years. Pacific Regent had complete control over when the units were re-rented or re-

**AMENDED COMPLAINT FOR VIOLATIONS
OF THE CONSUMER PROTECTION ACT; BREACH
OF FIDUCIARY DUTY; BREACH OF CONTRACT;
UNJUST ENRICHMENT; and OTHER WRONGFUL
CONDUCT - 2**
NO. 2:24-cv-01672-RSM

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
gene@defectivevehiclelaw.com

occupied, and the Plaintiffs had none. Pacific Regent not only failed to make a good faith effort to market and rent the unit previously occupied by the Plaintiffs' parents, but *continued to earn interest* on the Entrance Fee paid by the Andrews.

1.5  All Pacific Regent had to do to rent the unit was ask a fair price and make an earnest effort to market the unit.  This is not what occurred. Instead, Pacific Regent asked for an inflated price for the unit because they continued to earn significant interest on the Entrance Fee and the rental value of the unit increased every year. The Plaintiffs were powerless. Meanwhile, Pacific Regent encouraged former residents, or their heirs, to pay about $1,000.00 per month in "staging fees," which means furnishing a vacant unit. Pacific Regent does this for two reasons: 1) to save it the time, effort and expense of marketing its own units, and 2) to try to obtain higher-than-market rates for the rental of their units. Pacific Regent also asks former residents, or their heirs, to offer incentives of $15,000 to $80,000 to attract a renter, which is subtracted from the amount of the Entrance Fee that Pacific Regent must refund to former residents or heirs. There is no legal or factual basis for these requests, which serve only to *increase* Pacific Regent's profits through deceptive and unfair conduct. In fact, Pacific Regent essentially *coerces* residents or their heirs to pay these amounts, by withholding the 90% refund already due to them until residents comply with Pacific Regent's "requests."

1.6 The contract that Robert and Jane Andrews signed is called the "Residency Agreement" ("Agreement"). *See* **Exhibit 1** hereto. Section (26), entitled "Refund Provisions" purportedly governs the refund of the Entrance Fee. Section (26)(c)(i) shows

AMENDED COMPLAINT FOR VIOLATIONS
OF THE CONSUMER PROTECTION ACT; BREACH
OF FIDUCIARY DUTY; BREACH OF CONTRACT;
UNJUST ENRICHMENT; and OTHER WRONGFUL
CONDUCT - 3
NO. 2:24-cv-01672-RSM

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
gene@defectivevehiclelaw.com

1  that Robert and Jane Andrews chose the Ninety-percent (90%) refund option. Section

2  (26)(g) states: "Any refund due Resident will be made without interest and only after

3  Resident's accommodations have been vacated, refurbished as necessary, reserved by

4  another Resident, and the new Resident has made the then full Entrance Fee payment

5  to the Community."

6     1.7   Nothing in the contract requires Pacific Regent to adhere to *any* time limits for

7  leasing or renting the units and repaying the Plaintiffs' funds. Further, Pacific Regent is

8  dealing with the heirs and/or beneficiaries of the former residents, who have little or no

9  understanding of the Residency Agreement. Such heirs and beneficiaries also have no

10  familiarity with their legal rights and simply take whatever Pacific Regent offer them. This

11  is all accomplished with contracts of adhesion, which the elderly tenants, and their heirs

12  and beneficiaries, have no meaningful ability to challenge, negotiate or change.

13     1.8  The Residency Agreement would lead any reasonable consumer to believe that

14  they were entering into an agreement in which 90% of their investment—the Entrance

15  Fee—would be repaid in a *reasonable* amount of time at the termination of their

16  residency. If a unit is competitively priced, it should take no longer than 30-60 days to

17  secure a new tenant. Yet the Residency Agreement fails to indicate *when* (if ever) the

18  facility will refund the Entrance Fee. This utter lack of any time constraints for re-renting

19  the units and repaying residents' Entrance Fees in a consumer contract of adhesion is

20  deceptive and unfair under Washington law. Consumers are left with no reasonable

21

22  **AMENDED COMPLAINT FOR VIOLATIONS**
   **OF THE CONSUMER PROTECTION ACT; BREACH**
   **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**
23  **UNJUST ENRICHMENT; and OTHER WRONGFUL**
   **CONDUCT - 4**
24  NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

1    certainty regarding when they can ever expect to receive repayment. This is confusing,

2    deceptive and unfair to residents and their heirs on the part of Pacific Regent.

3        1.9  By refusing to promptly market and re-rent residents' units in good faith, Pacific

4    Regent maintained use of the Plaintiffs' funds interest-free. It did so for three years, on

5    the unconscionable claim that there was no set time at which they had to lease the unit

6    and make payment to the Plaintiffs. The Residency Agreement is therefore an illusory

7    contract where only one side was required to perform – the residents, or their heirs or

8    beneficiaries.   Such conduct is a violation of the Consumer Protection Act, the Rule

9    Against Perpetuities, and a breach of Pacific Regent's legal and equitable duties to the

10   Plaintiffs. The result is the unjust enrichment of Pacific Regent and its owners.

11       1.10   The 90% repayment of the Entrance Fee was a major inducement for the

12   Plaintiffs' parents to enter into the Residency Agreement with Pacific Regent. They

13   reasonably expected—as all new residents did—that Pacific Regent would responsibly

14   return their Entrance Fee in a reasonable amount of time following the termination of

15   their residency, or to their heirs or beneficiaries following their deaths. The Plaintiffs and

16   other residents had no reason to believe that Pacific Regent would unreasonably take

17   years to re-rent the unit, rendering the repayment obligation almost illusory. Pacific

18   Regent obviously benefited from its wrongful conduct because its profit from the re-

19   renting of the units increases with each day it delays repayment, not only with regard to

20   the amount of interest earned on the retained Entrance Fee, but because the cost of the

21

22   **AMENDED COMPLAINT FOR VIOLATIONS**
     **OF THE CONSUMER PROTECTION ACT; BREACH**
     **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**
23   **UNJUST ENRICHMENT; and OTHER WRONGFUL**
     **CONDUCT - 5**
24   NO. 2:24-cv-01672-RSM

     **Law Offices of Eugene N. Bolin, Jr., P.S.**
     **144 Railroad Avenue, Suite 308**
     **Edmonds, WA  98020**
     **Phone:  425-582-8165**
     **gene@defectivevehiclelaw.com**

Entrance Fee, as well as the rental price, continually rises over time. The value of all real estate increases with time and so do the units at Pacific Regent.

1.11    Had the Plaintiffs' parents known this when they were considering renting a unit at Pacific Regent, they very likely would *never* have considered living at Pacific Regent, much less signing the open-ended Agreement. No reasonable person would sign such an open-ended contract of adhesion where the other party is not required to perform within a certain time. The Agreement is therefore both unreasonable and unconscionable. Pacific Regent has refused to adhere to its legal and equitable duties to facilitate payment of the 90% refunds owed to residents, or their heirs or beneficiaries. Pacific Regent's conduct is therefore a violation of the Consumer Protection Act, RCW 19.86, *et seq.*

1.12    The Plaintiffs believe that all or most persons who have resided at any of the Pacific Regent's approximately one hundred and one (101) units in the last several years, have entered into agreements with Pacific Regent that contain the same, or similar deceptive and unfair language.

1.13    Based on the foregoing, the Plaintiffs bring this action on behalf of themselves, and all other similarly situated persons, as described herein. The Plaintiffs believe all such persons are entitled to the same relief as the Plaintiffs request herein. That includes a prompt refund of 90% of the Entrance Fee paid for all units that were vacated for more than six (6) months; the recovery of all out-of-pocket economic damages, pre-judgment interest, reasonable attorney's fees, costs, and treble damages. The Plaintiffs, on behalf of themselves and all other putative class members, now seek recovery of all such

**AMENDED COMPLAINT FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT; BREACH OF FIDUCIARY DUTY; BREACH OF CONTRACT; UNJUST ENRICHMENT; and OTHER WRONGFUL CONDUCT - 6**
NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

1  damages they have sustained which were proximately caused by Pacific Regent's

2  wrongful conduct.

3  ## 2. JURISDICTION

4      2.1    All acts, omissions, and wrongful conduct described herein occurred primarily

5  in King County, Washington.

6      2.2    The home-state exception is a statutory exception to the Class Action Fairness

7  Act (CAFA) of 2005, which requires a federal court to decline jurisdiction over a class

8  action if certain conditions are met. Federal courts must decline to exercise jurisdiction

9  where two-thirds or more of the members of all proposed plaintiff classes in the aggregate

10  and the primary defendants are citizens of the state where the class action was originally

11  filed (28 U.S.C. § 1332(d)(4)(B)). This is known as the "mandatory home state exception."

12  *See* Adams v. West Marine Products, 958 F.3d 1216 (9th Cir. 2020).

13      2.3    Alternatively, the court may in the interests of justice and looking at the totality

14  of circumstances, decline to exercise jurisdiction when more than one-third of the putative

15  class, and the primary defendants are citizens of the state where the action was originally

16  filed. 28 USC 1332(d)(3). More than two-thirds of the proposed class of putative plaintiffs

17  in the aggregate, and the primary defendants, are believed to be citizens of Washington

18  State. Thus, Snohomish County Superior Court has rightful jurisdiction over this matter.

19  ## 3. PARTIES

20      3.1    At all times relevant hereto, Linda Andrews was a resident of Thurston County,

21  Washington, and Kristen Andrews and Susan Andrews were residents of British Columbia,

22  **AMENDED COMPLAINT FOR VIOLATIONS**
   **OF THE CONSUMER PROTECTION ACT; BREACH**

23  **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**
   **UNJUST ENRICHMENT; and OTHER WRONGFUL**
   **CONDUCT - 7**

24  NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

1  Canada. The Plaintiffs are the children and heirs to the estate of Jane Andrews, a former

2  resident of Pacific Regent Bellevue Senior Living ("Pacific Regent") who passed away June

3  16, 2021, while a resident of Pacific Regent.

4      3.2  The Andrews Revocable Trust is administered at HomeStreet Bank in Lacy, WA.

5      3.3  The Plaintiffs reasonably believe that the putative class of similarly situated

6  plaintiffs consists of 150 - 250 persons who are parties to contracts which contain the

7  same material provisions as those contained in **Exhibit 1** hereto.

8      3.4  The Plaintiffs also reasonably believe that the class period begins no later than

9  six years before the filing date of the instant Complaint and ends when this action is

10  finally resolved.

11      3.5  919 109TH Avenue Owner, LLC, UBI 605 282 788, is the owner of Pacific Regent

12  Bellevue Senior Living ("Pacific Regent"), which it purchased in August, 2023. Pacific

13  Regent is a 17-story building located at 919 109th Ave NE, Bellevue, WA 98004, that

14  offers residency, care and services to qualified persons aged sixty-one years of age and

15  older. 919 109TH Avenue Owner, LLC, maintains an office located at 4500 Dorr St.,

16  Toledo, OH 43615.

17      3.6  The registered agent for 919 109th Avenue Owner, LLC, is Corporation Service

18  Company, which maintains an office located at 300 Deschutes Way SW, Ste. 208 MC-

19  CSC1, Tumwater, WA 98501.

20      3.7  Cogir Management USA, Inc., is a former and/or present owner of Pacific Regent,

21  UBI 604 332 460. Cogir Management USA, Inc., maintains an office located at 14905

22  **AMENDED COMPLAINT FOR VIOLATIONS**
   **OF THE CONSUMER PROTECTION ACT; BREACH**
23  **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**
   **UNJUST ENRICHMENT; and OTHER WRONGFUL**
   **CONDUCT - 8**
24  NO. 2:24-cv-01672-RSM

    **Law Offices of Eugene N. Bolin, Jr., P.S.**
    **144 Railroad Avenue, Suite 308**
    **Edmonds, WA  98020**
    **Phone:  425-582-8165**
    **gene@defectivevehiclelaw.com**

1  Bothell-Everett Highway, Mill Creek, WA 98012. Both present and former owners of Pacific

2  Regent are named as Defendants herein, because substantial questions of successor

3  liability exist.

4    3.8   The registered agent for Cogir Management USA, Inc., is C T Corporation

5  System, which maintains an office located at 711 Capitol Way S., Ste. 204, Olympia, WA

6  98501.

7    3.9   Fountains Bellevue SL, LLC, formerly doing business as Pacific Regent Bellevue

8  Senior Living, UBI 602 488 469, is the former owner of Pacific Regent with whom the

9  original contract with the Plaintiffs was signed. Fountains Bellevue SL, LLC, maintained a

10  corporate office located at 7902 Westpark Dr., McLean, VA 22102. According to the

11  Secretary of State website, Fountains Bellevue SL, LLC, stopped doing business in

12  Washington on March 31, 2017. Its registered agent was C T Corporation System, which

13  maintains an office located at 711 Capitol Way S., Ste. 204, Olympia, WA 98501. Both

14  present and former owners of Pacific Regent are named as Defendants herein, because

15  substantial questions of successor liability exist.

16    3.10   Fountains Pool I, LLC, is a former owner of Fountains Bellevue SL, LLC. It is

17  now named Fountains Pool IV, LLC, and is incorporated in Delaware, with a branch in

18  Michigan.

19    3.11   Watermark Retirement Communities, LLC, UBI 602 975 477, is the former

20  manager and operator of Fountains Bellevue SL, LLC. Watermark Retirement

21  Communities, LLC, is hereafter referred to as "Watermark" and maintains an office

22  **AMENDED COMPLAINT FOR VIOLATIONS**
**OF THE CONSUMER PROTECTION ACT; BREACH**

23  **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**
**UNJUST ENRICHMENT; and OTHER WRONGFUL**
**CONDUCT - 9**

24  NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

1  located at 2020 W. Rudasill Rd., Tucson, AZ 85704. Both present and former owners of

2  Pacific Regent are named as Defendants herein, because substantial questions of

3  successor liability exist.

4      3.12   The registered agent for Watermark Retirement Communities, LLC, is Corporate

5  Creations Network, Inc., which maintains an office located at 707 W. Main Ave. #B1,

6  Spokane, WA 99201.

7                    **4.  FACTS SUPPORTING CAUSES OF ACTION**

8      4.1     Pacific Regent is a 17-story building with 101 units in downtown Bellevue, WA.

9  Pacific Regent rents retirement units to qualified persons and provides services for its

10 elderly occupants.

11     4.2     Pacific Regent has a unique business plan. For each unit rented, Pacific Regent

12 charges residents a substantial sum of money (hundreds of thousands of dollars) for the

13 privilege of renting a unit. Pacific Regent retains this sum, known as an "Entrance Fee,"

14 before a new resident can occupy a unit. Ninety-percent (90%) of the Entrance Fee is

15 supposed to be refunded to the resident, or their heirs or beneficiaries, after the unit is

16 vacated.

17     4.3     Given Pacific Regent's unequivocal duty to repay 90% of the Entrance Fee to

18 their residents, or the residents' heirs or beneficiaries, Pacific Regent occupies the status

19 of a fiduciary to the residents, or their heirs or beneficiaries.

20     4.4   Pacific Regent has a financial incentive to delay the re-renting of the units.

21 Although the repayment amount owed to the Plaintiffs remains fixed, Pacific Regent

22 **AMENDED COMPLAINT FOR VIOLATIONS**              **Law Offices of Eugene N. Bolin, Jr., P.S.**
   **OF THE CONSUMER PROTECTION ACT; BREACH**          **144 Railroad Avenue, Suite 308**
23 **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**              **Edmonds, WA  98020**
   **UNJUST ENRICHMENT; and OTHER WRONGFUL**              **Phone:  425-582-8165**
   **CONDUCT - 10**                                    **gene@defectivevehiclelaw.com**
24 NO. 2:24-cv-01672-RSM

1  retains all interest earned on the funds and benefit from the increased Entrance Fee and

2  rental price of the units when they are re-rented.

3      4.5  This creates an unavoidable conflict of interest in Pacific Regent, which prejudices

4  the Plaintiffs as well as residents, or their heirs or beneficiaries. The actual conflict of

5  interest cannot be reconciled with the legal and equitable duties owed by Pacific Regent

6  to the Plaintiffs and putative class members. Nor can the actual conflict of interest be

7  reconciled with Pacific Regent's duty of good faith owed to the Plaintiffs. Pacific Regent

8  is therefore in breach of its contract with the Plaintiffs and all other putative class

9  members.

10      4.6    Linda Andrews, Susan Andrews, and Kristen Andrews are the heirs to the estate

11  of their mother, Jane Andrews, a former resident of Pacific Regent.

12      4.7    On July 25, 2014, the Plaintiffs' parents, I. Robert Andrews and Jane Andrews,

13  rented Unit #1807 of the Pacific Regent, and paid an Entrance Fee of $586,577.00,

14  pursuant to a "Residency Agreement" ("Agreement"), attached hereto as **Exhibit 1**. The

15  principal amount Pacific Regent owes the Andrews heirs is 90% of the Entrance Fee, or

16  $527,919.30.

17      4.8    I. Robert Andrews passed away in 2017. Jane Andrews passed away on June

18  16, 2021.

19      4.9    The Agreement provides that Jane Andrews, or her estate, will be paid 90% of

20  the Entrance Fee when the property is re-rented and a new Entrance Fee is received from

21  the new tenants. The 90% repayment was a major inducement for I. Robert and Jane

22  AMENDED COMPLAINT FOR VIOLATIONS          Law Offices of Eugene N. Bolin, Jr., P.S.
   OF THE CONSUMER PROTECTION ACT; BREACH        144 Railroad Avenue, Suite 308
23  OF FIDUCIARY DUTY; BREACH OF CONTRACT;            Edmonds, WA  98020
   UNJUST ENRICHMENT; and OTHER WRONGFUL           Phone:  425-582-8165
   CONDUCT - 11                                 gene@defectivevehiclelaw.com
24  NO. 2:24-cv-01672-RSM

1   Andrews to enter into the residence agreement with Pacific Regent.  Had Robert and Jane

2   Andrews known in 2014 that their daughters would be required to file suit against Pacific

3   Regent merely to recover the 90% repayment, they never would have done business with

4   Pacific Regent.

5       4.10    Pacific Regent re-rented Unit #1807 in May of 2024, after allowing the unit to

6   sit empty for three years. During this time, Pacific Regent encouraged the Plaintiffs to

7   pay fees and incentives to attract a renter for the unit, even though the re-renting of the

8   unit is the sole responsibility of Pacific Regent. For example, Pacific Regent asked the

9   Plaintiffs to pay $1,000 per month in staging fees (furnishing the unit) in order to attract

10  a renter. Pacific Regent also asked the Plaintiffs to offer an incentive of anywhere from

11  $15,000 to $80,000 to attract a renter. These fees and incentives would then be

12  subtracted from the Entrance Fee refund, resulting in increased profit for Pacific Regent

13  and a corresponding reduction in the amount Jane Andrews believed would be refunded

14  to her daughters. Such conduct on the part of Pacific Regent is unconscionable.

15      4.11    Pacific Regent employee Suzanne Singleton sent Plaintiff Linda Andrews

16  a release document that failed to indicate the amount to be released to the

17  Plaintiffs. Linda Andrews then asked Pacific Regent to rewrite the document to reflect

18  that the funds would be made out to the family's Revocable Trust, and not the Estate.

19  Pacific Regent did not respond to this request and then failed to communicate with the

20  Plaintiffs for months, until this suit was filed.

21

22  **AMENDED COMPLAINT FOR VIOLATIONS**
    **OF THE CONSUMER PROTECTION ACT; BREACH**
    **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**
23  **UNJUST ENRICHMENT; and OTHER WRONGFUL**
    **CONDUCT - 12**
    NO. 2:24-cv-01672-RSM
24

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

1    4.12    Linda Andrews, Susan Andrews, and Kristen Andrews now seek recovery of all

2    damages they have sustained that were proximately caused by Pacific Regent. This

3    includes pre-judgment interest at the statutory interest rate of 12%; treble damages

4    under Washington's Consumer Protection Act; reasonable attorney's fees; and costs.

5    ## 5.  CAUSES OF ACTION UNDER WASHINGTON LAW

6    Based on all of the foregoing facts, the Plaintiffs, on behalf of themselves and all

7    putative class members, assert the following causes of action against Pacific Regent:

8    **A.  Violations of the Consumer Protection Act**

9    5.1    Paragraph (33) of the Residency Agreement (**Exhibit 1**, hereto) is entitled

10    "Governing Law" and states "This Agreement shall be governed by, and construed in

11    accordance with, the laws of the State of Washington."

12    5.2    In order to prove a violation of the Consumer Protection Act, (RCW 19.86., *et*

13    *seq.*), a plaintiff must generally prove the following five elements: (1) an unfair or

14    deceptive act or practice; (2) which occurs in trade or commerce; (3) that impacts the

15    public interest; (4) which causes injury to the plaintiff in his or her business or property;

16    and (5) which injury is causally linked to the unfair or deceptive act. Hangman Ridge

17    Training Stables, Inc. v. Safeco Title Ins. Co., 105 Wash. 2d 778, 780 (1986).

18    5.3    The conduct of Pacific Regent's business is specifically subject to the Consumer

19    Protection Act. RCW 18.390.080. Further, Pacific Regent's failure to comply with the

20    reasonable expectations of its residents, established under RCW 18.390.070, are matters

21

22    **AMENDED COMPLAINT FOR VIOLATIONS**
**OF THE CONSUMER PROTECTION ACT; BREACH**
**OF FIDUCIARY DUTY; BREACH OF CONTRACT;**

23    **UNJUST ENRICHMENT; and OTHER WRONGFUL**
**CONDUCT - 13**

24    NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

1  vitally affecting the public interest for the purpose of applying the Consumer Protection

2  Act, RCW 19.86., *et seq.*

3     5.4  CPA causation is a proximate cause standard. <u>Indoor Billboard/Washington, Inc.</u>

4  <u>v. Integra Telecom of Wash., Inc.</u> 162 Wn.2d 59, 83, 170 P.3d 10 (2007). To prove

5  causation, a plaintiff "must establish that, but for the defendant's unfair or deceptive

6  practice, the plaintiff would not have suffered an injury." <u>Indoor Billboard</u>, 162 Wn.2d at

7  83. Deception exists under the CPA if a representation, omission, or practice by a

8  defendant that has the capacity to deceive a substantial portion of the public. <u>Panaq v.</u>

9  <u>Farmers Inc. Co.</u>, 166 Wn.2d 27, 47 (2009). Plaintiffs do not need to show that they relied

10  on the unfair or deceptive act to establish proximate cause. *See* <u>Panag</u>, 166 Wn.2d at 63-

11  64.

12     5.5  Similarly, it is not necessary for a plaintiff to be in privity with a defendant in

13  order to bring an action under the CPA; nor is it necessary for any of the Plaintiffs or

14  putative plaintiffs herein, to be a "consumer" in relation to Pacific Regent. *See* <u>Panag</u>, at

15  39-45.

16     5.6 The 90% repayment promise was a major inducement for Robert and Jane

17  Andrews to enter into the residence agreement with Pacific Regent. However, the decision

18  on the price and terms of any future leasing of the unit is entirely up to Pacific Regent,

19  rendering the repayment promise illusory, deceptive and unfair. Pacific Regent deceived

20  the Plaintiffs into believing that repayment would occur within a reasonable period of

21  time. Even more egregious, Pacific Regent has refused to acknowledge *any* responsibility

22  **AMENDED COMPLAINT FOR VIOLATIONS**
   **OF THE CONSUMER PROTECTION ACT; BREACH**
23  **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**
   **UNJUST ENRICHMENT; and OTHER WRONGFUL**
   **CONDUCT - 14**
24  NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA 98020**
**Phone: 425-582-8165**
**gene@defectivevehiclelaw.com**

1   or duty regarding the repayment owed to the Plaintiffs. The promise of repayment is

2   therefore deceptive, unfair, and a violation of RCW 19.86., *et seq*.

3       5.7 Section (26) of the "Residency Agreement" ("Agreement") is entitled "Refund

4   Provisions." This section governs the refund of the Entrance Fee. Section (26)(c)(i) shows

5   that I. Robert and Jane Andrews chose the Ninety-percent (90%) refund option. Section

6   (26)(g) states: "Any refund due Resident will be made without interest and only after

7   Resident's accommodations have been vacated, refurbished as necessary, reserved by

8   another Resident, and the new Resident has made the then full Entrance Fee payment

9   to the Community." Nothing in the contract requires Pacific Regent to adhere to any time

10  limits for leasing the units and repaying the Plaintiffs' funds. Pacific Regent asserts this

11  provision against heirs and beneficiaries, even though they are not parties to the

12  Agreement.

13      5.8 The deliberately ambiguous terms of the "Residency Agreement" constitute

14  deceptive and unfair conduct on the part of Pacific Regent toward its residents.

15      5.9 The wrongful conduct committed by Pacific Regent, all as described herein, was

16  deceptive and unfair and therefore a violation of the Consumer Protection Act, RCW

17  19.86., *et seq*. Such conduct proximately caused the Plaintiffs, and all members of the

18  putative class described herein, to sustain damages in an amount to be proven at trial.

19      5.10  No discovery has yet taken place. The Plaintiffs therefore reserve the right to

20  allege new facts and/or new causes of action, as discovery occurs.

21

22  **AMENDED COMPLAINT FOR VIOLATIONS**
    **OF THE CONSUMER PROTECTION ACT; BREACH**
    **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**
23  **UNJUST ENRICHMENT; and OTHER WRONGFUL**
    **CONDUCT - 15**
24  NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

**B. Breach of Contract**

5.11   Under Washington law, every contract is subject to an implied duty of good faith and fair dealing. <u>Rekhter v. Dep't of Soc. & Health Servs.</u>, 180 Wn.2d 102, 112 (2014). This duty obliges the parties to a contract to cooperate with each other in good faith, so that each party may benefit from full performance. *Id.*

5.12   To identify whether a breach of the duty of good faith and fair dealing has occurred, Washington courts have looked to a party's justified expectations under their contract. Our Supreme Court has held that "[t]he duty of good faith requires 'faithfulness to an agreed common purpose and consistency with the justified expectations of the other party.'" <u>Edmonson v. Popchoi</u>, 172 Wn.2d 272, 280 (2011) (quoting *Restatement (Second) of Contracts* § 205 cmt. a (Am. Law Inst. 1981)).

5.13   Upon the death of Jane Andrews, her intended beneficiaries (the named Plaintiffs) were entitled to receive a 90% refund of the Entrance Fee.  They are now entitled to sue for performance and damages resulting from Pacific Regent's breach of the Residential Agreement, since Pacific Regent has failed to fulfill its duties thereunder.

5.14   The Second Restatement of Contracts, § 302, describes intended beneficiaries: (1) Unless otherwise agreed between promisor and promisee, a beneficiary of a promise is an intended beneficiary if recognition of a right to performance in the beneficiary is appropriate to effectuate the intention of the parties and either (a) the performance of the promise will satisfy an obligation of the promisee to pay

**AMENDED COMPLAINT FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT; BREACH OF FIDUCIARY DUTY; BREACH OF CONTRACT; UNJUST ENRICHMENT; and OTHER WRONGFUL CONDUCT - 16**
NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

1    money to the beneficiary; or (b)  the circumstances indicate that the promisee intends to

2    give the beneficiary the benefit of the promised performance.

3        5.15    The Andrews heirs are the intended beneficiaries of the repayment as set forth

4    in the Revocable Trust signed by I. Robert and Jane Andrews.

5        5.16    A contract of adhesion exists where: (1) the contract is a standard form-printed

6    contract; (2) it was prepared by one party and submitted to the other on a take it or

7    leave it basis; and (3) there was no true equality of bargaining power between the

8    parties. <u>Townsend v. Quadrant Corp.</u>, 153 Wn. App. 870, 883-884, 224 P.3d 818

9    (2009). "The key inquiry is whether the party lacked meaningful choice, returning the

10   focus to the procedural unconscionability analysis." *Id.* Given the gross disparity in

11   bargaining power between the parties, many courts seek to protect the disadvantaged

12   injured party in interpreting the contract. Here, the matter is especially egregious because

13   the Plaintiffs had no input into the contract.

14       5.17    Pacific Regent has failed to fulfill its contractual duty to deal in good faith by

15   failing to make a good faith effort to re-rent Residence #1807 and return 90% of the

16   Entrance Fee to the Plaintiffs in a reasonable amount of time. Pacific Regent's lack of

17   good faith constitutes a breach of contract and proximately caused the Plaintiffs to sustain

18   damages, all as described herein.

19       5.18    No discovery has yet taken place. The Plaintiffs therefore reserve the right to

20   allege new facts and/or new causes of action, as discovery occurs.

21

22   **AMENDED COMPLAINT FOR VIOLATIONS**          **Law Offices of Eugene N. Bolin, Jr., P.S.**
     **OF THE CONSUMER PROTECTION ACT; BREACH**    **144 Railroad Avenue, Suite 308**
23   **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**     **Edmonds, WA  98020**
     **UNJUST ENRICHMENT; and OTHER WRONGFUL**     **Phone:  425-582-8165**
     **CONDUCT - 17**                              **gene@defectivevehiclelaw.com**
24   NO. 2:24-cv-01672-RSM

**C. Violation of the Rule Against Perpetuities**

5.19    The rule against perpetuities provides that "[no] interest is good unless it must vest, if at all, not later than twenty-one years after some life in being at the creation of the interest." Wash. State Grange v. Brandt, 136 Wn. App. 138, 148 P.3d 1069 (2006), *see also*, Betchard v. Iverson, 35 Wn.2d 344, 212 P.2d 783 (1949).

5.20    "The purpose of the rule is to prevent the fettering of the marketability of property over long periods of time by indirect restraints upon its alienation." Betchard, 35 Wn.2d at 348.

5.21    Certainly, the interest of the heirs of Robert and Jane Andrews in the 90% repayment, or $527,919.30, is an interest that would qualify. Because the repayment could vest, be resold, and reoccupied 100 years from now, the language violates the Rule Against Perpetuities and it is void *ab intio*.

5.22    Section 26 of the Andrews' Residency Agreement with Pacific Regent states, in part, "The refund will be ninety percent (90%) of the Entrance Fee." Yet, the re-leasing of the residence and its re-occupation may not occur for one year, five years, or even thirty years or more. The promise to repay is therefore – at best – remote and violates the intent of the rule against perpetuities. This is deceptive and unfair.

5.23    No time constraints or limitations are stipulated in the "Residency Agreement." Pacific Regent purportedly has the sole authority to rent Unit #1807 at any time and for any price. Because this power to lease the unit is not "expressly limited to a life in being

AMENDED COMPLAINT FOR VIOLATIONS
OF THE CONSUMER PROTECTION ACT; BREACH
OF FIDUCIARY DUTY; BREACH OF CONTRACT;
UNJUST ENRICHMENT; and OTHER WRONGFUL
CONDUCT - 18
NO. 2:24-cv-01672-RSM

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
gene@defectivevehiclelaw.com

1  and twenty-one years thereafter..." it is void on its face as it violates the Rule Against

2  Perpetuities.

3      5.24    Because the Residency Agreement contains no time constraints or limitations

4  in which Pacific Regent must re-rent the unit, Pacific Regent has, in essence, purportedly

5  released itself of any responsibilities, obligations, duties, or time limits, with regard to

6  returning the Entrance Fee to Jane Andrews's heirs. Such conduct defeats the purpose

7  and intent of the Rule Against Perpetuities.

8      5.25    The usual remedy provided for a party named by a contract or agreement

9  which violates the rule against perpetuities is to strike the objectionable provision. *See,*

10  Washington State Grange v. Brandt, 136 Wash. App. 138 (2006); Kennewick Public

11  Hospital District v. Hawe, 151 Wash. App. 660 (2009).

12     5.26    No discovery has yet taken place. The Plaintiffs therefore reserve the right to

13  allege new facts and/or new causes of action, as discovery occurs.

14  **D. Breach of Fiduciary Duty**

15     5.27    Pacific Regent has breached its fiduciary duties owed to the Plaintiffs in multiple

16  ways, including: 1) it delayed re-renting Unit #1807 for almost 36 months; 2) it has

17  encouraged Plaintiffs to offer financial incentives to potential renters, and/or to pay about

18  $1,000.00 per month in "staging fees" purportedly to attract a renter, though nothing in

19  the Residency Agreement states that it is the duty of the residents, heirs, or beneficiaries

20  to aid and/or provide financial support for the re-renting of the unit; 3) it has failed to

21

22  **AMENDED COMPLAINT FOR VIOLATIONS**
   **OF THE CONSUMER PROTECTION ACT; BREACH**
   **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**
23  **UNJUST ENRICHMENT; and OTHER WRONGFUL**
   **CONDUCT - 19**
24  NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

1    fulfill its promise of a 90% repayment of the Entrance Fee, thus causing the repayment

2    to remain illusory and unfulfilled.

3    5.28    The conduct of Pacific Regent violates its fiduciary duties to the Plaintiffs.

4    Pacific Regent has been using $527,919.30 of Andrews' family money, interest free, for

5    three years.

6    5.29    No discovery has yet taken place. The Plaintiffs therefore reserve the right to

7    allege new facts and/or new causes of action, as discovery occurs.

8    **E. Unjust Enrichment**

9    5.30    In Washington, a claim for unjust enrichment can arise when it is unfair for

10   one party to keep a benefit that was received at the expense of another party. "A person

11   is unjustly enriched when he or she profits or enriches himself or herself at the expense

12   of another contrary to equity." Farwest Steel Corp. v. Mainline Metal Works, Inc., 48 Wn.

13   App. 719, 731-32, 741 P.2d 58 (1987). The remedy for unjust enrichment is restitution.

14   In addition to restitution, a complainant may be able to recover damages for actual losses

15   caused by the misappropriation.

16   5.31    To establish an unjust enrichment claim, the following three elements must be

17   proven: 1) the defendant received a benefit; 2) the benefit was received at the expense

18   of the plaintiff; 3) it is unjust for the defendant to keep the benefit without paying for it.

19   "The doctrine of unjust enrichment applies only if the circumstances of the benefits

20   received or retained make it unjust for the defendant to keep the benefit without

21   paying." Chandler v. Wash. Toll Bridge Auth., 17 Wn.2d 591, 601, 137 P.2d 97 (1943).

22
AMENDED COMPLAINT FOR VIOLATIONS
OF THE CONSUMER PROTECTION ACT; BREACH
23   OF FIDUCIARY DUTY; BREACH OF CONTRACT;
UNJUST ENRICHMENT; and OTHER WRONGFUL
CONDUCT - 20
24   NO. 2:24-cv-01672-RSM

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
gene@defectivevehiclelaw.com

5.32    Here, Pacific Regent kept the Plaintiffs' Entrance Fee refund of $527,919.30 for a period of approximately three years. During this time, Pacific Regent benefitted from the use of the Plaintiffs' funds by earning interest on the $527,919.30. This interest rightfully belonged to the Plaintiffs, who were entitled to receive the entrance fee refund following the re-renting of their mother's unit, which they were justified in believing would occur soon after their mother "vacated" the unit in June, 2021. However, Pacific Regent unfairly delayed the re-renting of the unit for three years, earning interest on the Plaintiffs' entrance fee during this time. Pacific Regent therefore deprived the Plaintiffs of the interest they would have earned had the entrance fee been returned to them in a fair and reasonable amount of time.

5.33    The Plaintiffs are entitled to recover damages for Pacific Regent's misappropriation of the Plaintiffs' funds.  Pursuant to RCW 19.108.030, Plaintiffs are entitled to the following:

> 1) in addition to or in lieu of injunctive relief, a complainant may recover damages for the actual loss caused by misappropriation. A complainant may also recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss;
>
> 2) if willful and malicious misappropriation exists, the court may award exemplary damages in an amount not exceeding twice any award made under subjection (1).

5.34    "For purposes of a claim for unjust enrichment, the plaintiff may recover for expenditures made in preparation for performance that have a consequential relationship

AMENDED COMPLAINT FOR VIOLATIONS
OF THE CONSUMER PROTECTION ACT; BREACH
OF FIDUCIARY DUTY; BREACH OF CONTRACT;
UNJUST ENRICHMENT; and OTHER WRONGFUL
CONDUCT - 21
NO. 2:24-cv-01672-RSM

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
gene@defectivevehiclelaw.com

1  to the value of the benefit conferred on the defendant." <u>Young v. Young</u>, 164 Wn.2d 477,

2  480, 191 P.3d 1258, 1260 (2008).

3  **F.  Injunctive Relief**

4  5.35    RCW 7.40., *et seq*. governs the issuance of injunctive relief when the plaintiff

5  is entitled to the relief demanded and the relief consists of restraining the commission or

6  continuance of some act that has produced injury to the plaintiff(s); or when the

7  defendant is doing, or threatening, an act which violates the plaintiff's rights with regard

8  to the subject of the action.

9  5.36    "Upon the granting or continuing an injunction, such terms and conditions may

10  be imposed upon the party obtaining it as may be deemed equitable." *See* RCW 7.40.070.

**6.  CLASS CERTIFICATION UNDER FRCP 23**

11

12  **A. Class Allegations**

13  6.1    The Class described herein consists of the Plaintiffs, putative plaintiffs,

14  residents, former residents, and heirs or beneficiaries of former residents of Pacific

15  Regent. The facility is a 17-story, 101-unit senior living community in downtown Bellevue.

16  Members of the putative class include residents who rented units at Pacific Regent at any

17  time in the last six (6) years, or their heirs or beneficiaries.

18  6.2    All persons described in the preceding paragraph are putative class members

19  to this action. All putative class members are, or were, owed a partial refund of an

20  Entrance Fee. The terms for repayment of the Entrance Fee are unreasonably harsh

21  toward residents who voluntarily choose to terminate their residency, because Pacific

22  AMENDED COMPLAINT FOR VIOLATIONS
OF THE CONSUMER PROTECTION ACT; BREACH
OF FIDUCIARY DUTY; BREACH OF CONTRACT;
23  UNJUST ENRICHMENT; and OTHER WRONGFUL
CONDUCT - 22
24  NO. 2:24-cv-01672-RSM

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
gene@defectivevehiclelaw.com

1  Regent claims it is under no obligation to refund any portion of the Entrance Fee within

2  a time certain.

3      6.3   It is likely that numerous residents, past, present and future, have and will

4  continue to suffer damages as a result of Pacific Regent's deceptive practices, in the same

5  way that the Plaintiffs have. Perhaps the most egregious of these practices is Pacific

6  Regent's refusal to make repayments until vacated units are reoccupied, and the new

7  tenant has paid the applicable Entrance Fee. Even then, Pacific Regent can delay the

8  refund indefinitely. Pacific Regent has sole control over the leasing of the unit and can

9  overprice or delay reoccupation for as long as it wishes, thus delaying repayment in

10  perpetuity. This is deceptive and unfair.

11      6.4   As heirs and beneficiaries to former residents of Pacific Regent, the named

12  Plaintiffs are members of the putative class in this action. The Plaintiffs are representative

13  of this Class in every material way.

14      6.5   The putative class consists of residents or former residents of Pacific Regent in

15  the last six years, as well as the heirs or beneficiaries of said residents. Pacific Regent's

16  failure to repay residents' Entrance Fees represents damages in the millions of dollars.

17  **B. Proposed Class**

18      6.6   Plaintiffs bring this case as a Class action under Civil Rule 23(b)(2) and/or

19  23(b)(3) on behalf of all persons who currently occupy a unit in Pacific Regent and paid

20  an Entrance Fee under a Residency Agreement with Pacific Regent; all persons who

21  formerly occupied a unit in Pacific Regent in the last six (6) years and are owed a refund

**AMENDED COMPLAINT FOR VIOLATIONS
OF THE CONSUMER PROTECTION ACT; BREACH
OF FIDUCIARY DUTY; BREACH OF CONTRACT;
UNJUST ENRICHMENT; and OTHER WRONGFUL
CONDUCT - 23**
NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

1   of 90% of the Entrance Fee; all persons who formerly occupied a unit at Pacific Regent

2   and received a 90% refund of the Entrance Fee more than six (6) months after vacating

3   the unit; and all heirs or beneficiaries of residents who have "vacated" a unit at Pacific

4   Regent in the last six (6) years but did not receive a refund within six (6) months after

5   the unit was vacated;

6       6.7   The putative class is composed of more than 100 residents, making joinder

7   impossible. Since the Pacific Regent has approximately 101 units, the maximum number

8   of current Pacific Regent residents could easily be in excess of 200 persons, including

9   spouses.

10      **C. Numerosity**

11      6.8  The putative class described above is composed of more than 100 consumers,

12  making joinder impossible. Federal case law suggests forty class members as being a

13  sufficient amount to satisfy the numerosity requirement. *See* Orr v. Shicker, 953 F.3d

14  490, 498 (7th Cir. 2020), (*quoting* Mulvania v. Sheriff of Rock Island County, 850 F.3d

15  849, 859 (7th Cir. 2017). Here, the number of alleged class members substantially

16  exceeds that amount, satisfying the numerosity standard as set by federal case law.

17      **D. Commonality**

18      6.9  Common questions must predominate in order to satisfy the commonality

19  required of a class action. Here, the putative class members have similar facts and

20  circumstances due to the actions of Pacific Regent. Specific residential agreements

21  between Pacific Regent and individual residents may vary somewhat, but all such

22  **AMENDED COMPLAINT FOR VIOLATIONS**            **Law Offices of Eugene N. Bolin, Jr., P.S.**
    **OF THE CONSUMER PROTECTION ACT; BREACH**        **144 Railroad Avenue, Suite 308**
23  **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**          **Edmonds, WA  98020**
    **UNJUST ENRICHMENT; and OTHER WRONGFUL**         **Phone:  425-582-8165**
    **CONDUCT - 24**                                   **gene@defectivevehiclelaw.com**
24  NO. 2:24-cv-01672-RSM

agreements contain a reimbursement provision without reference to when it must be paid—a fact common to all putative class members. Because the factual circumstances and questions are common and similar in nature, proceeding through a class action would be more appropriate over litigating individual claims.

6.10    Material questions of law and fact in this action are the same for all members of the putative Plaintiffs described herein and predominate any issues that impact only individual members   Common questions for the Class include:

1.    Did Pacific Regent rent units to consumers under deceptive and unfair repayment terms? (Yes.)

2.    Did Pacific Regent fail to disclose to consumers that they could retain their Entrance Fee with no limit on the length of time Pacific Regent had to re-rent the unit? (Yes.)

3.    Did the Residency Agreements create ambiguity regarding the repayment of their Entrance Fee? (Yes.)

4.    Did the Residency Agreement disclose that residents, or their heirs or beneficiaries, could be required to pay thousands of dollars themselves, in order to simply re-rent the unit? (No.)

5.    Did Pacific Regent meaningfully fail to disclose all disclaimers relevant to the re-renting of residences? (Yes.)

**E. Typicality**

6.11    The claims of the Class of putative plaintiffs of Pacific Regent are typical of the claims of the individually named Plaintiffs. All members of the Class are subject to the same deceptive and unfair conduct inherent in all of Pacific Regent's residential agreements that contain a repayment provision.

AMENDED COMPLAINT FOR VIOLATIONS
OF THE CONSUMER PROTECTION ACT; BREACH
OF FIDUCIARY DUTY; BREACH OF CONTRACT;
UNJUST ENRICHMENT; and OTHER WRONGFUL
CONDUCT - 25
NO. 2:24-cv-01672-RSM

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
gene@defectivevehiclelaw.com

1      6.12    Typicality is satisfied "when each class member makes similar legal arguments

2  to prove the defendant's liability." <u>Rodriguez v. Hayes</u>, 591 F.3d 1105, 1124 (9th Cir.

3  2009).

4      6.13    This requirement is "permissive" and requires only that the representative's

5  claims be "reasonably co-extensive with those of the absent class members; they need

6  not be substantially identical." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1020 (9th Cir.

7  1998). "The purpose of the typicality requirement is to assure that the interest of the

8  named representative aligns with the interests of the class." <u>Hanon v. Dataproducts Corp.</u>,

9  976 F.2d 497, 508 (9th Cir. 1992).

10     **F.  Adequate Representation**

11     6.14    The Plaintiffs are adequate representatives of the Class of putative plaintiffs

12  described herein. The facts of this case specific to the Andrews heirs represent the extent

13  and nature of the deceptive and unfair acts committed by Pacific Regent.

14     6.15    Neither the Plaintiffs nor their counsel have any conflicts of interest which might

15  impair their ability to represent members of the putative class plaintiffs.

16     **G. Superiority**

17     6.16    A class action is a superior method for adjudicating the claims at issue in this

18  case and class-wide adjudication can be effectively managed.

19     6.17    Courts have outlined the test from Rule 23(b)(3) to consider when deciding if

20  a class action is a superior method of adjudication. *See* <u>Datta v. Asset Recovery Solutions,</u>

21  <u>LLC</u>, 2016 U.S. Dist. LEXIS 36446 (N.D. Cal. 2016). Those factors include:

22  **AMENDED COMPLAINT FOR VIOLATIONS**              **Law Offices of Eugene N. Bolin, Jr., P.S.**
    **OF THE CONSUMER PROTECTION ACT; BREACH**            **144 Railroad Avenue, Suite 308**
23  **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**                    **Edmonds, WA  98020**
    **UNJUST ENRICHMENT; and OTHER WRONGFUL**                **Phone:  425-582-8165**
    **CONDUCT - 26**                                       **gene@defectivevehiclelaw.com**
24  NO. 2:24-cv-01672-RSM

1. the class members' interests in individually controlling the prosecution or defense of separate actions;

2. the extent and nature of any litigation concerning the controversy already begun by or against class members;

3. the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

4. the likely difficulties in managing a class action.

6.18    Here, part (1) is satisfied because there is no specific intent by the named members to control the adjudication for other class members. There is a common interest in resolving the deception and inequity taking place, including assurance of consistent methods across the board so every resident who vacates a unit, either voluntarily or involuntarily, can receive the refunds they are entitled to in an organized and timely manner.

6.19    Part (2) has been satisfied because, as far as the parties are aware, no litigation has yet taken place regarding the specific issues set forth in this Amended Complaint.

6.20    Part (3) has been met given the policy interest in achieving judicial economy. If a large number of litigants make similar claims, it would present an enormous backlog and administrative burden for the courts. A class action is the best way to resolve the high likelihood of similar claims, and the unnecessary expense of litigating individual claims.

6.21    Part (4), related to management of a class action, depends largely on whether the Plaintiff's case "rises and falls on common evidence." *In re* High-Tech Emp. Antitrust Litig., 985 F. Supp. 2d 1167, 1228 (N.D. Cal. 2013). In the case here, all class members

AMENDED COMPLAINT FOR VIOLATIONS
OF THE CONSUMER PROTECTION ACT; BREACH
OF FIDUCIARY DUTY; BREACH OF CONTRACT;
UNJUST ENRICHMENT; and OTHER WRONGFUL
CONDUCT - 27
NO. 2:24-cv-01672-RSM

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
gene@defectivevehiclelaw.com

1  possess the same core issue of whether they are receiving their repayment in a timely

2  and consistent manner. The underlying concerns are common to all class members. Thus,

3  part (4) has been satisfied.

4      6.22    For the reasons stated above, proceeding by way of class action is the superior

5  method of adjudication.

6  **H. Predominance**

7      6.23    This Class action is appropriate for certification because questions of law and

8  fact common to members of the Class predominate over questions affecting only

9  individual members. The predominance inquiry "entails identifying the substantive issues

10  that will control the outcome, assessing which issues will predominate, and then

11  determining whether the issues are common to the class, a process that ultimately

12  prevents the class from degenerating into a series of individual trials." *See* <u>Gene and

13  Gene LLC v. BioPlay LLC</u>, 541 F.3d 318, 326 (5th Cir. 2008).

14      6.24    Here, because the questions of all class members arise from a common course

15  of conduct and involve the same legal issues, and individual claims would present a

16  significant backlog and administrative burden to the courts, the predominance

17  requirement has been met.

18  **I. Class-Wide Relief is Appropriate**

19      6.25    Class-wide relief is appropriate under all of the facts described herein.

20

21

22  AMENDED COMPLAINT FOR VIOLATIONS
   OF THE CONSUMER PROTECTION ACT; BREACH
23  OF FIDUCIARY DUTY; BREACH OF CONTRACT;
   UNJUST ENRICHMENT; and OTHER WRONGFUL
   CONDUCT - 28
24  NO. 2:24-cv-01672-RSM

Law Offices of Eugene N. Bolin, Jr., P.S.
144 Railroad Avenue, Suite 308
Edmonds, WA  98020
Phone:  425-582-8165
gene@defectivevehiclelaw.com

## 7. PROXIMATE CAUSE AND DAMAGES

The wrongful conduct of Pacific Regent, all as described herein, proximately caused the Plaintiffs and the putative class members to sustain substantial damages, all as described herein.

## 8. PRAYER FOR DAMAGES

WHEREFORE, the Plaintiffs, the Andrews Revocable Trust, by and through its Trustee and Beneficiary Linda Andrews, and Beneficiaries Kristen Andrews and Susan Andrews, pray for judgment against the Defendants in an amount that will compensate the Plaintiffs and Class members for all damages they have sustained that were proximately caused by Pacific Regent's wrongful conduct, including the following equitable and legal relief:

a.   repayment of all monies owed the named Plaintiffs;

b.   injunctive relief to prohibit future wrongful conduct;

c.   all past, present and future damages;

d.   all relief available under Washington's Consumer Protection Act;

e.   all relief available under RCW 18.390., *et seq;*

f.   all relief available under Washington's rule against perpetuities;

g.   all relief under additional statutes and other authorities cited herein;

h.   prejudgment interest calculated at the maximum amount allowable by law;

i.   reasonable attorney's fees and costs; and

j.   any and all other relief deemed just and equitable at the time of trial.

**AMENDED COMPLAINT FOR VIOLATIONS OF THE CONSUMER PROTECTION ACT; BREACH OF FIDUCIARY DUTY; BREACH OF CONTRACT; UNJUST ENRICHMENT; and OTHER WRONGFUL CONDUCT - 29**
NO. 2:24-cv-01672-RSM

**Law Offices of Eugene N. Bolin, Jr., P.S.**
**144 Railroad Avenue, Suite 308**
**Edmonds, WA  98020**
**Phone:  425-582-8165**
**gene@defectivevehiclelaw.com**

1  DATED at Edmonds, Washington, this 3rd day of December, 2024.

2                           **LAW OFFICES OF EUGENE N. BOLIN, JR., P.S.**
                            *s/Eugene N. Bolin, Jr.*
3                           Eugene N. Bolin, Jr., WSBA #11450
                            Attorney for Plaintiffs
4                           144 Railroad Ave., Ste. 308
                            Edmonds, WA  98020
5                           425-582-8165
                            Email:  gene@defectivevehiclelaw.com

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22  **AMENDED COMPLAINT FOR VIOLATIONS**                **Law Offices of Eugene N. Bolin, Jr., P.S.**
    **OF THE CONSUMER PROTECTION ACT; BREACH**             **144 Railroad Avenue, Suite 308**
23  **OF FIDUCIARY DUTY; BREACH OF CONTRACT;**                   **Edmonds, WA  98020**
    **UNJUST ENRICHMENT; and OTHER WRONGFUL**              **Phone:  425-582-8165**
    **CONDUCT - 30**                                  **gene@defectivevehiclelaw.com**
24  NO. 2:24-cv-01672-RSM

EXHIBIT 1

### The Fountains at Pacific Regent
*Residency Agreement*

THIS RESIDENCY AGREEMENT ("Residency Agreement") is made and entered into this _24th_ day of _July_ , _2014_ ("Effective Date") by and between: (i) **Fountains Bellevue SL, LLC** ("Owner") acting through its manager, **Watermark Retirement Communities, Inc.** ("Watermark") d/b/a **Pacific Regent Bellevue** (the "Community"), and (ii) _I. Robert and Jane Andrews_ ("you" or Resident"). (If more than one person enters into this Residency Agreement, the word "you" as used here shall include both persons unless otherwise stated.)

The Community is managed by Watermark. Watermark's address is 2020 W. Rudasill Road, Tucson, AZ 85704.

If two persons are shown as Resident, Resident as used in this Agreement shall include both such persons collectively, jointly, and severally.

In consideration of the mutual promises hereafter set forth, and intending to be legally bound hereby, the Community and Resident agree as follows:

(1) **Definitions.** For the purposes of this Agreement, the following definitions shall have the meanings provided below:

   (a) **Admissions Committee** – The Admissions Committee shall be comprised of the Administrator of the Health Center and a physician appointed by Watermark who is not employed by the Watermark and who is licensed to practice medicine in the State of Washington.

   (b) **Association** – The non-profit corporation organized under the laws of the State of Washington pursuant to that Certain Amendment to Tower 1 Declaration by Restatement and Amendment of Declaration (King County Recording Number 9207082579) for Pacific Regent Tower 1 (a Condominium, herein after called "Condominium") as amended by Second Amendment (King County Recording Number 9505081133) dated April 18, 1995 (the "Restated Declaration").

   (c) **Common Areas** – The hallways, elevators, walkways, lobbies, dining facilities, parking areas, meeting rooms, grounds and other areas designated by the Community from time to time for use by all Residents within the Community and their guests. The Common Areas are, in part, within the Common Areas defined within the Restated declaration.



© WRC – Rev. 1/15/13

(e)    **Community** – The Fountains at Pacific Regent located at 919 109th Ave. Northeast, Bellevue, WA  98004-4493. The Fountains at Pacific Regent is managed by Watermark as provided in this Agreement and is, in part, within Tower 1 and the Common Areas defined in the Restated Declaration.

(f)    **Entrance Fee** – The amount of $ ~~50~~ *586,577 + 15,000 non-refundable* described in paragraph 7.

(g)    **Executive Director** – The person designated by Watermark from time to time as Director of the Fountains at Pacific Regent.

(h)    **Owner** – Fountains Bellevue SL, LLC is the owner of The Fountains at Pacific Regent.

(i)    **Watermark** – Watermark Retirement Communities, Inc. is the manager and operator of the Health Care Center and The Fountains at Pacific Regent.

(j)    **Guidelines** – As used in this Agreement, Guidelines means both (i) the guidelines adopted and published from time to time by Watermark, in its discretion, to govern occupancy of Units at The Fountains at Pacific Regent and (ii) the rules and regulations adopted and published from time to time by the Association to govern occupancy at the Tower and Common Areas.

(k)    **Health Center** – The health care facility within the Community at which Watermark provides nursing care services.

(l)    **Monthly Residential Fee** – The monthly charge payable by Resident to the Community provided in paragraph 7(b).  The Monthly Residential Fee is currently $ * if one person occupies the Suite and $ ** if two persons occupy the Suite.  The Monthly Residential Fee is subject to adjustment from time-to-time by the Community in accordance with paragraph 7(d).

(m)    **Suite** – Unit No. *807* in the Community.

(n)    **The Fountains at Pacific Regent** – The Units within the Community which are managed by Watermark on behalf of the Owner.

(o)    **Tower** – The Pacific Regent Tower 1 located at the Community. The Pacific Regent Tower 1 is owned by members of the Association, including Owner. The Fountains at Pacific Regent is comprised of Units owned in the Tower by Owner.

(2)    **Grant of Occupancy.**  The Community hereby grants to Resident the exclusive use and

*\* $3,520 1st person*    *\*\* 4,220 2 persons*

    © WRC – Rev. 1/15/13

possession of the Suite, so long as Resident complies with the terms and provisions of this Agreement.

(3)  **Furnishings.**  Within the Suite, the Community will provide and maintain (other than maintenance required by reason of any negligence or misuse by Resident), basic cable television outlet, a pull cord response system, a refrigerator, range, dishwasher, garbage disposal, and other standard fixtures and appliances provided by the Community for other similar Suites. All other furnishings and furniture reasonably required to furnish the Suite suitably shall be provided by Resident. Resident shall provide any maintenance required by reason of any negligence or misuse by Resident. Resident is responsible for maintenance on any appliances they purchase for their suite.

(4)  **Accommodations and Services.**  Subject to any limitations contained in the Guidelines, the Community will provide services to Resident as follows:

(a)  **Utilities.**  The Community will furnish heating, light, water, sewer, electricity and garbage removal from the Community for comfortable occupancy, in the Community reasonable judgment, of the Suite. Resident will be responsible for telephone installation, charges relating to the telephone and any premium cable service beyond the basic cable service.

(b)  **Meals.**  The Association prepares and offers to residents of the Tower lunch and dinner on a daily basis in the Tower dining room. The Community will pay for one meal per day for the Resident (or, if two persons are Residents under this Agreement, two meals per day) for each day of the month (the "Meals Allowance"). The Resident may use the Meals Allowance in accordance with the Guidelines adopted by the Association. Residents may purchase additional meals from the Community if they like.

(c)  **Routine Services and Facilities.**  The Community will provide the following services to Resident: Weekly Housekeeping, Pull Cord Response Services, Wellness Clinic, Underground Parking (One Space per Suite for an automobile used and owned or leased by the Resident), Professional Services, Scheduled Transportation, Social and Recreational Programs and Facilities, and Laundry Facilities.

(i)  The Community will provide the Weekly Housekeeping Services, Pull Cord Response Services, Wellness Clinic, Underground Parking, and Professional Services.

(ii)  The Scheduled Transportation Services, Social and Recreational Programs and Facilities, and Laundry Facilities will be provided by the Association.  If

© WRC – Rev. 1/15/13

the Association fails to provide these services, the Community will cause this service to be provided.

(iii)     The various services provided for in this paragraph shall consist of those services established from time to time by the Community for the benefit of residents at The Fountains at Pacific Regent generally.

(d)     **Health Center.**  Resident will have preferred access to the Health Center at the Community when an uncommitted and unoccupied bed is available.   Additionally, Resident will receive a credit of the then current semi-private room rate in the Health Center for sixty (60) days per Suite.  If a designated semi-private room is not available during the period of the sixty (60) day benefit, the Resident may stay in another room until such time as a designated semi-private room becomes available.  When and if a designated room becomes available, (i) the Resident may transfer to the designated room or choose to stay in the room to which originally admitted provided the Resident shall, in this latter case, be responsible for the difference in cost between such room and the designated semi-private room.  After utilization of the sixty (60) day credit per Suite, the Resident will receive a lifetime benefit of a ten percent (10%) reduction in the room rate regularly established by the Community from time to time.  The sixty (60) day benefit provided in this paragraph is in addition to any Medicare benefit to which Resident may be entitled.

(e)     **Maintenance.**  Subject to paragraph 5, the Community will cause the interior and exterior of the buildings and grounds of the Community to be maintained.   The Community will repair and maintain (i) the equipment and appliances owned by the Community or provided to Resident by the Community and (ii) electrical and plumbing located within, and providing service solely to, the Suite, other than any repairs and maintenance required by reason of any negligence or misuse by Resident.   Resident will repair and maintain the equipment and appliances and electrical and plumbing if any is required by the reason of the negligence or misuse of Resident.

(5)     **Responsibility for Services.**  The Pacific Regent Tower 1 Condominium is owned by members of the Association, including Owner.  The Fountains at Pacific Regent is comprised of Units in the Condominium owned by Owner.  The rights and obligations of the members of the Association are set forth in the Restated Declaration. The Association has certain rights and obligations to its members, including Owner, respecting the maintenance and operation of Pacific Regent Tower 1. Many services to residents in the Tower are provided and controlled by the Association. The Community will use its best efforts to cause the Association to fulfill its obligations in a manner consistent with this

Agreement. **YOUR AGREEMENT, HOWEVER, IS WITH THE COMMUNITY ONLY AND ONLY THE COMMUNITY IS RESPONSIBLE TO YOU·FOR THE SERVICES DESCRIBED WITHIN THIS AGREEMENT. THE ASSOCIATION HAS NO RESPONSIBILITY FOR PROVIDING THE SERVICES WHICH THE COMMUNITY IS REQUIRED BY THIS AGREEMENT TO PROVIDE TO YOU.** The Association has agreed to extend all its services, including without limitation hospitality events, to all Residents of the Pacific Regent on the same basis as it does to members of the Association.

(6)    **Admission Requirements and Procedures.**   Upon execution of this Agreement and acceptance by the Community and fulfillment of all obligations hereunder, Resident will be qualified for admission to the Community, subject to the following:

(a)    Admission is restricted to persons at least sixty-two (62) years of age.

(b)    Resident must submit to the Community a Confidential Application for Admission and Confidential Personal Health Report by a physician of the Resident's choice who is licensed to practice medicine in any state or territory of the United States which report shall have been prepared no earlier than sixty (60) days prior to the date of its submission, on such forms as the Community may specify, for review and approval by the Community.

(c)    Within thirty (30) days prior to possession, a health assessment must be performed by the Admissions Committee and it must be determined by the Admissions Committee that the Resident is able to live safely in his/her Suite, that the residence of the Resident would pose no threat to the health or safety of the Resident or other Residents, and that the residence of the Resident is not likely to result in physical damage to the property of others in the Community. Based upon the findings of the Admissions Committee, the Community may terminate this Agreement or, consistent with the Restated Declaration, require the Resident to allow and maintain sufficient health care service to permit safe residence.

(7)    **Financial Arrangements.**  Resident will pay three separate fees: (i) an Entry Fee Deposit, (ii) an Entrance Fee, and (iii) a Monthly Residential Fee, as follows:

(a)    **Entry Fee Deposit. The Entry Fee Deposit is $ _37,000_** which the Resident has heretofore paid to the Community. The Entry Fee Deposit (previously referred to in the Entry Fee Agreement as the "Total Entry Fee Deposit") is part of the Entrance Fee.

(b)    **Entrance Fee.**  Resident agrees to pay the Community the Entrance Fee in order to become a Resident of the Community. The Community acknowledges receipt of $ _37,000_ **, as payment of part of the**

© WRC – Rev. 1/15/13

**Entrance Fee**, which was paid with Entry Fee Agreement and Wait List Agreement.  Thus, an aggregate of $ _37,000_ of the Entrance Fee has been paid to date.  The balance of $ _564,577_ of the Entrance Fee shall be payable in full at least ten (10) days prior to the date of projected occupancy of the Suite by Resident. Resident understands that the Entrance Fee is charged for the right of use and possession of the Suite, the use of the Common Facilities, and access to the services, programs, and facilities of the Community, including those provided by the Association and those provided by the Community in accordance with this Agreement. Resident further understands that the Entrance Fee is determined by, and varies with, the size and type of the Suite, and the Refund Option selected by the Resident in accordance with paragraph 26(c). The Entrance Fee is separate from, and in addition to, the Monthly Residential Fee and any other additional charges for services provided by the Community as contemplated by this Agreement or the Guidelines or otherwise charged by the Community (the "Other Charges").

(c)     **Monthly Residential Fee.**  In addition to the Entrance Fee and the Other Charges, Resident shall pay the Community the Monthly Residential Fee.  The Monthly Residential Fee shall be payable on or before the fifth (5th) day of each and every month.  Payment of the Monthly Residential Fee shall commence on the earlier of (i) the first day of actual occupancy of the Suite or (ii) the first (1st) day from the date on the signed Entry Fee Agreement. In the event Resident takes up occupancy of the Suite on a date other than the first day of a calendar month, the Monthly Residential Fee shall be prorated during the first month of occupancy based on the actual number of days in the month. Resident understands that the Monthly Residential Fee varies with the size and type of the Suite and is a charge for occupancy of the Suite.

(d)     **Late Fees.**  If any Monthly Residential Fee or any other amount payable by Resident to the Community is not paid when due, the Community may collect a late fee of one percent (1%) per month.  Upon the failure of Resident to pay all Monthly Residential Fees plus any late fees due by the sixtieth (60th) day following notice that such payment is past due, the Community may terminate this Agreement.

(e)     **Adjustments in Monthly Residential Fee.**  The Community will, when appropriate in its discretion, adjust the Monthly Residential Fee to meet increases in the cost of operation and management of the Community; provided, however, no more than one (1) such adjustment shall be made in any one (1) calendar year.  Increases in the Monthly Residential Fee or other charges may be made by the Community only upon sixty (60) days written notice to Resident.

(f)    **Monthly Statements.** The Community will furnish Resident a monthly statement showing the total amount of the Monthly Residential Fee and all other charges owed by Resident. All amounts will be due and payable by the **fifth** (5th) day of the month.

(g)    **Health Center:** The Community will establish and publish rates for services provided by or in the Health Center. If admission to the Health Center is temporary, an appropriate adjustment in the Monthly Residential Fee will be made in an amount determined by the Community in its discretion in order to minimize, where possible, the duplication of payment by Resident for any services covered by both the Monthly Residential Fee and Health Center service charges.

(8)    **Policy on Non-Payment.** It is the policy of the Community that this Agreement will not be terminated solely because of Resident's inability to pay the Monthly Residential Fee if such inability to pay is not, in the judgment of the Community, within the control of the Resident and, in the judgment of the Community, the financial integrity of the Community will not be adversely affected. Any unpaid amounts shall be deducted from any refunds which may be or become payable to Resident under this Agreement.

(9)    **Representations, Warranties and Covenants of Resident.** Resident hereby represents and warrants to, and covenants with the Community as follows:

(a)    All of the information and statements furnished by Resident are and will be true and correct as of the date furnished. Resident will immediately notify the Community of any changes in any of such information.

(b)    Resident will comply with such Guidelines as may be adopted and published by the Community from time-to-time, by the Restated Declaration, and by such rules and regulations for the Community as the Association may adopt from time to time in accordance with the Restated Declaration.

(c)    Resident will not transfer his or her property or assets for less than adequate and fair consideration or make any attempt, directly or indirectly, to dispose of any property or assets, whether by gift or otherwise, in such manner as might impair his or her ability to fully perform his or her obligations under this Agreement.

(10)    **Notification of Availability.** As early as possible, but at least thirty (30) days in advance, the Community will notify Resident of the date the Suite is projected to be available for occupancy by Resident. Thereafter, the Community will notify Resident of any changes in such projected date.

(11)    **Alterations and Repairs.** Resident will not make any alterations, additions, improvements or repairs to the Suite without the prior written consent of the Community.

Any alterations, additions, improvements or repairs to the Suite will become a part of the Suite. In such event, upon termination of Resident's use and occupancy of the Suite, Resident will, at the option of the Community,: (a) remove such property, restore the Suite to its original condition, and repair any damage to the Suite caused by such removal; or (b) leave such alterations, additions, improvements or repairs in the Suite in good condition and repair. If any alterations, additions, improvements or repairs remain a part of the Suite, the value thereof will not be a factor in determining any refund payable to Resident under this Agreement.

(12) **Maintenance and Repair of Suite.** Resident will maintain the Suite in good condition and repair. Resident will repair or replace any damage done to the Suite or the Community by Resident or any of Resident's guests or invitees. Resident will not commit any waste within the Community. All repairs for which Resident is obligated under the provisions of this paragraph will be performed by persons selected by the Community at its sole discretion.

(13) **Resident's Personal Property.** Resident will be solely responsible for all personal property, furniture or fixtures placed in the Suite by Resident. Resident may not install any appliances or equipment that may necessitate any changes, replacements or additions to the plumbing, heating, or electrical system servicing the Suite without the prior written approval of the Community. Existing appliances in the Suite may not be replaced without the prior written approval of the Community.

(14) **Terms of Residency.** Resident may occupy and enjoy the Suite during his or her natural life, unless this Agreement is terminated for any reason, including a termination in accordance with the provisions of paragraph 17.

(15) **NO RIGHTS IN PROPERTY. RESIDENT SHALL NOT HAVE ANY FEE OWNERSHIP OF, OR TITLE TO, THE SUITE OR COMMON AREAS OF THE COMMUNITY. THIS AGREEMENT DOES NOT IN ANY WAY CONSTITUTE A SALE OF, AND DOES NOT TRANSFER OR GRANT TO RESIDENT ANY INTEREST IN, THE REAL OR PERSONAL PROPERTY OWNED BY FOUNTAINS BELLEVUE SL, LLC AND MANAGED BY WATERMARK RETIREMENT COMMUNITIES, INC. COMPRISING ALL OR ANY PART OF THE COMMUNITY, OTHER THAN THE RIGHT TO USE, POSSESS AND ENJOY THE SUITE IN ACCORDANCE WITH AND SUBJECT TO THE TERMS AND CONDITIONS OF THIS AGREEMENT.**

(16) **Certain Understandings.** Resident understands and agrees that:

(a) Resident may use and occupy the Suite and Common Areas solely for residential purposes. Resident may not use any part of the Community, including the Suite, for commercial purposes, nor shall Resident use any part of the Community for any purposes, which is unlawful, disreputable, adversely affects the operation of the Community, or increases the risk of casualty or damage.

© WRC – Rev. 1/15/13

(b)     Resident will control himself/herself and his/her guests in such manner as not to create any nuisance or interfere with, improperly annoy or disturb other Residents of the Community. Resident will require his/her guests to comply with the Guidelines and such rules and regulations as the Association may adopt from time to time in accordance with the Restated Declaration.

(c)     The Community may change or alter the Suite to meet requirements of any applicable federal, state or local statute, ordinance, law, regulation or code requirement.

(d)     Except for short-term visitors or guests, no person other than Resident may reside in or occupy the Suite without the prior written approval of the Community.

(e)     The Community shall not be responsible for the loss of any personal property belonging to Resident due to theft, loss, mysterious disappearance, damage, fire or any other cause. Resident, and not the Community, will be solely responsible for providing any desired insurance protection covering any such loss.

(f)     If Resident includes two (2) persons, a termination of this Agreement as to one (1) of the persons will not affect the continuation of the Agreement as to the other person. Upon the death, termination or permanent transfer of one (1) such persons, the remaining Resident may retain the same Suite or, depending upon availability, move to a smaller Suite. If the remaining Resident elects to move to a smaller Suite, the remaining Resident shall pay the Entrance Fee Refund due in respect of such smaller Unit and shall be entitled to receive repayment of such Entrance Fee Refund paid for the smaller Suite fourteen (14) days after the Community receives the then full Entrance Fee under a new Residency Agreement for the larger (or original) Suite.

(17)     **Change in Required Care.**

(a)     In the event (i) the Resident's continued residency is likely to pose a direct threat to the health or safety of the Resident or of other Tower 1 residents, guests, or employees or (ii) the Resident's continued residency would likely result in substantial physical damage to the property of others at the Community, giving due consideration in either case to the level and adequacy of health care being provided to and received by the Resident, all as determined by the Admissions Committee, Resident hereby agrees to voluntarily seek appropriate health care or transfer to the Health Center or other appropriate health care facility. In the event the Resident fails to voluntarily take the foregoing action, as determined

by the Admissions Committee, the Community may terminate this Agreement. Any decision to terminate this Agreement in accordance with this paragraph will be made only after consultation with Resident's physician, the Executive Director, representatives of Resident's family, if reasonably available, and to the extent possible with the Resident.

(b)     If it is determined by the Admissions Committee that Resident needs care beyond the scope or capabilities of the facilities and personnel available in the Community or an emergency exists, Resident may be transferred to a hospital or other appropriate health care center or institution equipped to provide the required care. Such transfer will be made only after consultation with Resident's physician, the Executive Director, representatives of Resident's family, if reasonably available, and with Resident to the extent possible. Resident will be solely responsible for all associated costs.

(c)     Admission to the Health Center may be denied if the Resident's care cannot be safely managed in the Health Center or if specialized care is required and not available, including, but not limited to, cases of certain communicable diseases, psychiatric diagnoses, and Alzheimer's disease or other related dementia.

(d)     If the Admissions Committee determines that any transfer or change of required care as described in subparagraph (a) above will likely be permanent in nature and the Community terminates this Agreement, Resident hereby agrees to voluntarily surrender his/her right to use and occupy the Suite. If, however, the Admissions Committee subsequently determines that Resident can resume occupancy in accommodations equivalent to those previously occupied by him/her, Resident shall have priority to such accommodations as soon as they become available, with no additional Entrance Fee, unless any part of the Entrance Fee was refunded, in which event the refunded part of the Entrance Fee must be paid to the Community before readmission.

(18)    **Acceptance of Suite.** By taking occupancy of the Suite, Resident will be deemed to have accepted the Suite as suitable without any additions, alterations, changes, or repairs.

(19)    **Assignment.** The rights and privileges of Resident under this Agreement, including the right to occupancy and use of the Suite, are personal to Resident and cannot be transferred or assigned by act of the Resident or by any proceeding at law, or otherwise without prior written consent of the Community which may be granted or withheld in its sole discretion.

(20)    **Condemnation.** If all or any part of the Suite is taken or condemned for any public use or purpose by right of eminent domain, or are transferred by Agreement in lieu of or under threat of condemnation and the Community is unable to provide the use and occupancy of the Suite or the services contemplated by this Agreement, the Community may terminate

this Agreement.

(21) **Casualty**. If the Suite is damaged by fire or other casualty and such damage cannot be repaired within a reasonable period of time (which shall not be less than sixty (60) days) from the date of the occurrence (as estimated by the Community as soon as reasonably practicable after the occurrence of such damage), this Agreement, at the option of the Community upon notice to Resident, will terminate.

    (a)    If this Agreement is terminated in accordance with paragraph, the Monthly Residential Fee will be equitably adjusted, as determined in the good faith judgment of the Community, to the date on which such damage occurred and Fountains shall refund to Resident t ninety percent (90%) of the Entrance Fee.

    (b)    If the damage can be repaired within such reasonable period of time, or if the Community does not exercise its option to terminate this Agreement, the Community will make all necessary repairs and this Agreement will continue in effect, but the Monthly Residential Fee will be equitably adjusted, as determined in the good faith judgment of the Community, until such repairs are made, unless the damage is slight and Resident's occupancy of the Suite is not materially interrupted or unless the damage was caused by Resident.

    (c)    The Association maintains casualty insurance in accordance with the Restated Declaration. The Resident shall have the sole responsibility of procuring all other insurance, if Resident desires to do so, including, but not limited to, insurance for personal liability and insurance for Resident's loss of occupancy, moving expenses, personal belongings, equipment, and appliances.

(22) **Subordination**. This Agreement and all rights of Resident hereunder are subject and subordinate to any and all mortgages, security agreements, collateral assignments and other encumbrances, which now or hereafter effect the Owner's interest in, or title to, the real-estate and improvements owned by Fountains Bellevue SL, LLC, the Suite, the Common Areas or the Community; provided Owner obtains an associated non-disturbance agreement from any lender or other lien holder in such form and content as Owner shall in its discretion determine. Resident will not be liable for any indebtedness of Owner with respect thereto.

(23) **Entry**. The Community and its agents, employees and contractors may enter the Suite during reasonable hours upon such notice as is required by law (or, in an emergency, at any hour) to inspect, clean, repair or alter the Suite as the Community deems necessary. In addition, the Association has the right to enter the Suite on the terms set forth in the Restated Declaration.

(24) **Abandoned Property**. All personal property not removed by Resident or Resident's

© WRC – Rev. 1/15/13

family or other representative within thirty (30) days after termination of this Agreement (unless arrangements satisfactory to the Community for later removal are made) will be presumed to have been abandoned by Resident. The Community may, at its option, thereafter take possession of such property and either declares it to be the property of the Community or, at Resident's expense, places the property in storage or disposes of it in such manner and for such consideration as the Community, in its sole discretion, deems appropriate.

(25)   **Termination Provisions.** This Agreement shall terminate as follows:

    (a)    <u>Termination Within First Sixty (60) Days</u>. The first sixty (60) days of occupancy in the Suite will be deemed occupancy on a trial basis. During such period, Resident may terminate this Agreement in Resident's sole discretion upon thirty (30) days written notice to the Community of such termination. During such period the Community may also terminate this Agreement upon thirty (30) days written notice to Resident if, in its sole discretion, the Community determines, after reasonable accommodation by the Community and Resident, that Resident's physical, mental or emotional condition will not permit Resident to appropriately adapt to the Community.

    (b)    <u>Termination After First Sixty (60) Days of Occupancy</u>. Resident may, in Resident's sole discretion, terminate this Agreement after the first sixty (60) days of occupancy upon thirty (30) days prior written notice to the Community.

    (c)    <u>Other Terminations</u>. The Community may terminate this Agreement upon thirty (30) days written notice to Resident as provided elsewhere in this Agreement.

(26)   **Refund Provisions.** Upon termination of this Agreement for any reason including those set forth in Paragraph 25, refunds (the "Refund") shall be due Resident in an amount determined by whether the notice of termination is given (i) prior to the Resident's first day of actual occupancy, (ii) within the first sixty (60) days of occupancy, or (iii) after the first sixty (60) days of occupancy. If this Agreement terminates pursuant to a notice given after the first sixty (60) days of occupancy, the refund will be based upon one of three refund options (the "Refund Options") selected by the Resident at the time of the signing of this Agreement as provided in subparagraph (c) below. All refunds are subject to the provisions of subparagraphs (d) through (j) below and the other provisions of this Agreement.

    (a)    <u>Refund Upon Notice Of Termination Given Prior To Actual Occupancy</u>. Resident shall receive a full refund of the Entrance Fee paid less the Reservation Deposit.

    (b)    <u>Refund Upon Notice Of Termination Given Within First Sixty (60)</u>

© WRC – Rev. 1/15/13

Days Of Occupancy. Resident will receive a refund of the Entrance Fee, less one percent (1%) of the total Entrance Fee if the Resident occupies the Suite for one (1) month or less and two percent (2%) of the Total Entrance Fee if the Resident occupies the Suite for more than one (1) month.

(c)     Refund Upon Notice Of Termination Given After First Sixty (60) Days Of Occupancy. Resident will receive a refund based on the Refund Option hereafter selected by Resident:

    (i)     **Ninety Percent (90%) Refund Option:** The refund will be ninety percent (90%) of the Entrance Fee. Resident hereby elects the ninety percent (90%) Refund Option: _Selected_

    (ii)    **Fifty Percent (50%) Refund Option:** On the sixty-first (61st) day of occupancy the refund will be ninety percent (90%) of the Entrance Fee; thereafter, the refund will decrease further by an amount equal to .74075% of ninety percent (90%) of the Entrance Fee for each month or partial month of occupancy for the next sixty (60) months. After sixty (60) months the Refund shall be fifty percent (50%) of the Entrance Fee. Resident hereby elects the fifty percent (50%) Refund Option: _____

    (ii)    **Zero Percent (0%) Refund Option:** On the sixty-first (61st) day of occupancy the Refund will be ninety percent (90%) of the Entrance Fee; thereafter, the Refund will decrease further by an amount of $ each month or partial month of occupancy for the next sixty (60) months. After sixty (60) months the Refund shall be zero percent (0%) of the Entrance fee. Resident hereby elects the zero percent (0%) refund option. _____

(d)     This Agreement shall terminate on the death of Resident or as provided elsewhere in this Agreement. In all such events, the Community will refund the Entrance Fee in accordance with the preceding provisions of this paragraph, subject to the following provisions of this paragraph.

(e)     The Suite will be vacated within thirty (30) days following notice of any termination of this Agreement. The Community reserves the right to charge a per diem rate beginning with the thirty-first (31st) day

                                                                 © WRC – Rev. 1/15/13

following termination if the Suite is not timely vacated.

(f)     The Community may terminate this Agreement at any time (i) if there is any material misrepresentation or omission made by the Resident in his Application for Admission (ii) if a material change in Resident's health takes place before occupancy, or (iii) if Resident fails to make payment to the Community for any Monthly Residential Fees or Other Charges, or (iv) if Resident materially breaches any of Resident's obligations under this Agreement.  In no event will the Community refund any Reservation Deposit.

(g)     Any refund due Resident will be made without interest and only after Resident's accommodations have been vacated, refurbished as necessary, reserved by another Resident, and the new Resident has made the then full Entrance Fee payment to the Community.

(h)     Any refund due Resident shall be subject to a common right of offset by the Community for any accrued, but unpaid Monthly Residential Fee or Other Charges due the Community by Resident, including without limitation any late charges, if any, and charges for restoring or refurbishing the Suite and Common Areas as provided herein.

(i)     Upon termination of this Agreement, Resident or Resident's estate shall timely vacate the Suite and shall leave the Suite in good condition, normal wear and tear expected.   Resident shall be liable to the Community for additional costs incurred to restore the Suite and its furnishings owned by Owner and any damage to Common Areas caused by the Resident or his or her representatives to good condition, normal wear and tear expected.

(j)     Nothing in this paragraph shall be construed to eliminate or diminish any requirement or obligation of payment by Resident of the Monthly Residential Fee or Other Charges when due or to require the refund or reimbursement of any such fees or charges by the Community; provided no Monthly Residential Fee shall be charged after thirty days following termination if Resident has vacated the Suite in the manner required by this Agreement.

(k)     The refund provisions of paragraph 21 shall control, when applicable, over the provisions of this paragraph 26.

(27)    **Rights of Management and Nature of Interest Granted.**  All rights of management of the Community are reserved by Owner and Watermark.  The Community reserves the right to accept or reject any person for residency.  The rights of Resident do not include any right to participate in the management of The Fountains at Pacific Regent Program or to determine admission or terms of admission for any other Resident.  This Agreement

grants Resident only the right of occupancy set forth in paragraph 2 of this Agreement; this Agreement does not create a life estate, lease or other interest in real estate or personal property. Resident acknowledges and agrees that Resident is not being granted any voting rights in the Homeowners Association, which voting rights are expressly reserved to the Community. The Community shall pay any debt service and provide reasonable real property insurance.

(28)   **Inability to Manage Affairs.**  Resident agrees that if she or he is incapable of governing herself or himself or managing her or his affairs, and there are no other interested parties willing to act, the Community will have an interest in the matter and will be entitled to institute legal proceedings for the determination of Resident's incompetency and for the appointment of a legal guardian for Resident's person and/or property. The Community shall incur no liability for any action so taken absent bad faith.

(29)   **Notices.**  Any notices, requests, demands or other communications required or permitted to be given hereunder shall be in writing and shall be deemed to have been duly given if delivered personally or deposited in the United States first class mail, postage prepaid, to the addresses of the parties set forth at their signatures to this Agreement. After Resident commences occupancy of the Suite, the address of Resident shall be the address of the Suite, and notices may be placed in Resident mail boxes or under Resident's door.

(30)   **Joint and Several Liability.**  If Resident is more than one person, the obligations, representations, warranties and covenants herein shall be joint and several as to each of such persons. If a guarantor of the obligations of Resident is required, the obligations of Resident hereunder shall be the joint and several obligations of Resident and the guarantor, and the release, forbearance or discharge of any guarantor will not relieve Resident from the performance of his/her obligations hereunder.

(31)   **Severability.**  If any clause or provision of this Agreement is illegal, invalid or unenforceable under any present or future law, the remainder of this Agreement will not be affected thereby.

(32)   **Assignment.**  This Agreement shall be binding upon, and shall inure to the benefit of the Community and Resident and their respective heirs, legal representatives, successors and assigns.

(33)   **Governing Law.**  This Agreement shall be governed by, and construed in accordance with the laws of the State of Washington.

(34)   **Remedies Cumulative.**  The various rights, powers, elections and remedies of the Community hereunder are considered to be cumulative, and no one of them is exclusive of any others afforded by law or otherwise.

(35)   **Waivers.**  No Failure on the part of the Community to exercise, and no delay in exercising, any right, remedy, power or privilege hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right, remedy, power or waiver by

© WRC – Rev. 1/15/13

the Community be valid unless in writing and signed by the Community, and then only to the extent set forth in such writing.

(36)   **Approval by Lenders.**  To the extent any lender or mortgagee of the Owner is given the right to approve this Agreement, this Agreement shall be subject to the Owner's receipt of such approval.

(37)   **Amendments.**  This Agreement may be amended only by a written Agreement signed by Resident and the Community.  Nothing contained herein shall be construed to **limit** in any way the Community's right to make changes in services, Guidelines, or other policies and procedures of the Community.

(38)   **Entire Agreement.**  Resident agrees that there are no representations, understandings, stipulations or other agreements, verbal or written, relating to the Suite which are not contained herein or in the documents to which reference is made herein.  This Agreement contains the entire understanding and agreement of the Community and Resident with respect to the subject matter contained herein, except as set forth in the documents to which reference is made herein. In the event of a conflict between the provisions of the Restated Declaration and this Agreement, the provisions of the Restated Declaration shall control.  In the event of a conflict between this Agreement and the Guidelines, this Agreement shall control.

**[Signature Appear on Next Page]**

DATED the day and year first above written:

FOUNTAINS BELLEVUE SL, LLC:

By:   Watermark Retirement Communities, Inc., its manager

By:   _____   7-25-14
      *Executive Director of The Fountains at Pacific Regent*

      _____ TTEE
      *(Resident)*

      13016 SE 21st Place
      *(Address)*

      Bellevue, WA 98005
      *(City/State)*

      425-644-4566
      *(Telephone)*

      June L Andrews TTEE
      *(Resident)*

      Same as above
      *(Address)*

      _____
      *(City/State)*

      _____
      *(Telephone)*

© WRC – Rev. 1/15/13